Argued January 22, affirmed February 11, petition for
review denied April 9, 1974

# STATE OF OREGON, *Respondent, v.* ELMER THOMAS DAVIS (No. 73-109-C), *Appellant.*

### 518 P2d 1039

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Robert M. Burrows,* District Attorney, Grants Pass, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant was convicted of murder, ORS 163.115, and appeals. The only issues raised during the trial were (1) the affirmative defense of lack of criminal responsibility due to mental disease or defect, ORS 161.295 (1);[1] and (2) the defense of extreme emotional disturbance mitigating murder to manslaughter, ORS 163.125 (1) (b).[2] Defendant waived his right to a jury and trial was to the court.

The evidence revealed that defendant and his wife retired around 11:30 p.m., February 11, 1973. They then quarrelled and the wife dressed and went out. While she was gone defendant armed himself with a

---

[1] ORS 161.295 (1) provides:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

[2] ORS 163.125 (1) (b) provides:

"(1) Criminal homicide constitutes manslaughter when:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation * * *

"* * * * *."

knife and hammer and returned to bed. Upon her return she went to bed. A struggle ensued and she was killed by manual strangulation. Following her death defendant engaged in a bizarre episode involving his use and mutilation of her body.

Defendant's first two assignments of error relate to the adverse findings of the court relating to the two defenses represented in issues (1) and (2) above.

■ (1). As to the first defense there was conflicting evidence as to defendant's sanity at the time the crime was committed. The conflict revolved mainly around the inferences to be drawn from defendant's bizarre behavior after his wife was dead.

Two psychiatrists for the defense testified that it was their opinion defendant was legally insane when he committed the crime. They felt he had undergone a psychotic episode as a result of his inability to cope with the stress of conflict, mostly sexual in nature, with his wife. It was their opinion that defendant's bizarre behavior after the killing was a continuation of this psychotic episode, which had begun sometime before the killing.

Two psychiatrists for the state testified that it was their opinion that defendant was legally sane at all times. They felt that defendant had a personality disorder that did not arise to the status of mental disease or defect. As a result of this personality disorder defendant's reaction to his wife's conduct was to become so enraged that he intentionally and knowingly killed her. His bizarre behavior after she was dead was viewed by these psychiatrists as a further venting of his anger and frustration at a time when she could no longer "put him down."

The trier of fact resolved the conflict in the evi-

dence in favor of the state, and found that defendant was legally sane at the time he killed his wife. He was also of the opinion that defendant had intentionally killed his wife. The trial judge specifically noted that the defense psychiatrists themselves said defendant had the "capacity to appreciate the criminality of his acts" and "had appreciation of what had happened," respectively. There was more than adequate evidence to support the finding on this issue by the trial court and it cannot be disturbed upon appeal.

■ (2). As to the second defense the trial court in its opinion stated:

"* * * The Defendant likewise has interposed a defense that the homicide, if committed by the Defendant, was committed under the influence of extreme emotional disturbance. The burden of proving that the crime committed was not committed under the influence of extreme emotional disturbance is upon the State of Oregon and must be established beyond a reasonable doubt by the State. *State vs. Siens*, [12 Or App 97, 504 P2d 1056, Sup Ct *review denied* (1973)]. During the trial there was no serious contention made that the Defendant was under any extreme emotional disturbance. The thrust of the entire defense is mental disease or mental defect and not extreme emotional disturbance."

It is true that no witness categorized defendant's behavior in terms of extreme emotional disturbance. In this respect, as in *State v. Siens,* supra, the omission makes the fact trier's job difficult. However, the thrust of the prosecution's case, as distinguished from the defense, both on rebuttal and in chief was that this was a "temper" killing. Defendant was portrayed as a man who seldom lost his temper but when he did exploded into violence. It was the prosecution's thesis that de-

fendant grew so infuriated at his wife that he intentionally killed her. This evidence might or might not support a finding that defendant was under the influence of an extreme emotional disturbance at the time of the killing, depending upon the fact trier's appraisal of it, measured by the applicable statute.

ORS 163.125 provides:

"(1) Criminal homicide constitutes manslaughter when:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, *which disturbance is not the result of his own intentional,* knowing, reckless or criminally negligent *act, and for which disturbance there is a reasonable explanation*; or

"* * * * *

"(2) For the purposes of paragraph (b) of subsection (1) of this section, *the reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be.*

"* * * * *." (Emphasis supplied.)

Practically uncontroverted was the fact that defendant's disturbance, however it is characterized, was the result of his conflict with his wife. That conflict in turn centered around the wife's complaints about her husband's sexual inadequacies and the husband's feelings about his wife's extramarital affairs.

The trial court's finding, in our estimation, was that there was no emotional disturbance with an explanation reasonable enough to justify finding it was such an extreme emotional disturbance as ORS 163.125 prescribes for mitigating murder to manslaughter. The

trial judge's written findings cited *State v. Siens,* supra, so we know that as he decided the case as a fact trier (in the place of a jury) he was aware of its language:

"\* \* \* This does not mean that the only evidence that may be considered in this regard is expert evidence, or that expert evidence is indispensable. A jury is not bound to find in conformity with the testimony of any number of witnesses which does not produce conviction, as against other evidence which does satisfy it. ORS 17.250 (2). So, if there is expert evidence which the jury finds does not carry conviction over other evidence in the case, it may make its factual determinations based upon the latter." 12 Or App at 102.

In *State v. Corbin,* 15 Or App 536, 516 P2d 1314 (1973), we noted that

"\* \* \* the statutory scheme puts the decision as to the reasonableness of the explanation for the extreme emotional disturbance completely in the hands of the jury. *Cf. State v. Siens,* [supra]." (Footnote omitted.)

The trial judge specifically said, after noting *State v. O'Berry,* 11 Or App 552, 503 P2d 505 (1972), Sup Ct *review denied* (1973),[9] that the statutory scheme "is not intended to cover a situation where the only reasonable interpretation of the evidence is that the actor intentionally starts the act which causes the commission of the crime." This we take to be the trial court's rejection of the reasonableness of the defendant's explanation for his acts and disturbance. The explanation was necessarily rejected by the fact trier

---

[9] In its reference to State v. O'Berry, supra, in its written opinion the trial court also quoted the language therein which we modified in State v. Corbin, 15 Or App 536, 516 P2d 1314 (1973). We do not view this reference as having any effect upon our result at bar.

by reason of his findings and that determination was based upon evidence. We cannot disturb it.

■ ■ Defendant also assigns as error the court's failure to afford him a jury trial and to change venue. Defendant, accompanied and advised by counsel in open court, waived a jury and was closely advised and questioned as to this decision by the court before the waiver was allowed. Defendant made no motion for a change of venue. These assignments are without merit.

Affirmed.